UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ACTUS LEND LEASE LLC,

                              **Plaintiff,**

-against-                                                       7:07-CV-459

INTEGRATED BUILDING RESOURCES
DEVELOPMENT LLC,

                              **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

### I. INTRODUCTION

      Plaintiff ACTUS LEND LEASE LLC ("Actus"), the prime contractor on a construction project to build new on-post housing for military personnel and their families at Fort Drum, New York (the "Crescent Woods Project"), commenced this diversity action contending that Defendant INTEGRATED BUILDING RESOURCES DEVELOPMENT LLC ("IBR") breached a Subcontract Agreement ("Subcontract") to perform specific work in the Crescent Woods Project. See Compl. dkt. # 1. IBR filed a motion to dismiss the action, contending that Actus agreed to arbitrate the matter. Actus has opposed the motion.

### II. BACKGROUND

      Actus is the prime contractor on the Crescent Woods Project. Haas Decl. ¶ 2. On

1

September 8, 2005, Actus entered into the Subcontract with IBR for IBR to perform a specific scope of work that included the installation of plumbing and HVAC in the housing units. Haas Decl. ¶ 3.

The Subcontract provides for certain procedures, including binding arbitration, for disputes that arise from the Subcontract (discussed more fully below).  In IBR's moving papers, which consist only of a Notice of Motion and an affirmation from Plaintiff's counsel with exhibits, IBR contends that "[t]he parties elected to go forward with arbitration in this matter, pursuant to the provisions of the contract." Feder Aff. ¶ 7.  There is no discussion of the underlying dispute.  Actus contends:

> During the course of the project, Actus experienced numerous problems with IBR's contractual performance including its failure to properly complete the scope of its plumbing and HVAC work, failure to furnish sufficient manpower, tools, equipment and materials required to maintain the construction schedule, and its installation of defective work. Haas Decl. ¶ 4; Compl. ¶¶ 13-21. On September 29, 2006, after issuing numerous Notices to Cure, which were either not corrected or to which no response was received, Actus exercised its contractual right to terminate IBR's Subcontact. Haas Decl. ¶ 4. As a result of IBR's termination and the deficiencies in IBR's existing work, Actus suffered damages including the cover costs of hiring two follow-on subcontractors to complete IBR's scope of work. Compl. ¶¶ 27-30. As a result of IBR's default and termination, Actus has incurred nearly $1.5 million in recoverable contract damages. Compl. ¶¶ 34-36. Actus filed this diversity action on May 1, 2007 to recover these contractual damages incurred as a result of IBR's breach of its obligations under the Subcontract.

Actus Mem. L. p. 3.

The Subcontract provides that when a dispute arises "in connection with the Subcontract or the subject matter thereof," the aggrieved party "shall deliver immediate written notice adequately identifying and providing details of the dispute (a 'Claim Notice')." Subcontract § 4.2.1.  Following delivery of a Claim Notice, the parties "must endeavor in good faith to resolve the dispute within ten (10) days."  Subcontract § 4.2.1.2.  If the

2

dispute can not be resolved, "either party may elect, by written notice (a 'Dispute Notice'), to submit the matter to binding arbitration as set forth [in § 4.2.1.3 of the Subcontract]." Id.

The Subcontract provides at § 4.2.1.3 that a dispute between the Contractor and Subcontractor "which involves the correlative rights and duties of [the] Owner" shall be "subject to and decided by binding arbitration." Subcontract § 4.2.13.  However, the Subcontract also provides at § 4.2.1.3 that a dispute between the Contractor and Subcontractor that does not involve "the correlative rights and duties of [the] Owner" may be submitted to "a court of competent jurisdiction located in the State in which the Project is located." Id.

IBR contends that during a telephone call that took place on January 19, 2007 with its attorney, Steven Feder, Actus' in-house counsel, Christine Haas, verbally agreed to arbitrate the instant dispute. Feder Aff. ¶¶ 8-9, Haas Decl. ¶ 8.  Actus contends that Haas was mislead by Feder as to the terms of the Subcontract in that Feder advised that the Subcontract required arbitration and set Napa, California as the venue for arbitration. See Haas Aff. ¶¶ 8-11.  Believing that the Subcontract required arbitration in Napa, California, Haas agreed to change venue to Syracuse, New York and sent an e-mail to this effect. Id. Haas contends, however, that while she did agree to change venue, she did not agree to arbitrate the matter. Id.  When Haas later reviewed the Subcontract, purportedly for the first time, she learned that the Subcontract did not require arbitration for the instant dispute and did not have a venue selection clause. Id.  Actus then elected to proceed in this Court. Id.

In opposition to the pending motion, Actus asserts that: (1) the issues in dispute are not subject to mandatory arbitration under the terms of the Subcontract, see Haas Aff. ¶¶

3

20-21; (2) Actus never agreed to arbitrate the matter, id. ¶ 16; and (3) neither party served a written demand for arbitration ("Dispute Notice") as required by the terms of the Subcontract. Id. ¶ 23.  In reply, IBR asserts that the subject matter of the underlying dispute is covered by the mandatory arbitration provisions of the Subcontract at § 4.2.1.3 because it involves correlative rights and duties of the Owner.  See Feder Reply Decl. ¶¶ 6-10.  IBR does not address whether a written Dispute Notice was submitted in accordance with Subcontract § 4.2.1.2, nor does counsel dispute that he advised Haas that the matter was governed by mandatory arbitration that would, unless agreed otherwise, be arbitrated in Napa, California.  See id.

### III. DISCUSSION

The matter appears to be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), as argued by Actus.[1]  See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)( The FAA creates a "body of federal substantive law of arbitrability" applicable to arbitration agreements affecting interstate commerce.).  The FAA "requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation," Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003); see Moses H. Cone Mem'l Hosp., 460 U.S. at 24 (The terms of the FAA provision evidences "a liberal federal policy favoring arbitration agreements."); Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 147 (2d Cir. 2004)(the FAA creates a "strong presumption in favor of arbitration"), cert. denied, 543 U.S. 874 (2004).

---

[1] Actus argues in opposition to the motion that the matter is governed by the Federal Arbitration Act. IBR does not dispute this legal contention in its reply declaration from counsel. See Feder Reply Decl.

Pursuant to the terms of the FAA, the Court has authority to stay a properly-filed federal lawsuit in order to enforce an arbitration agreement, 9 U.S.C. § 3,[2] and to compel arbitration. 9 U.S.C. § 4.[3] Inasmuch as IBR seeks an order dismissing the Complaint and "directing the matter to arbitration," Feder Aff. p. 4, the Court presumes that IBR moves, at least in part, pursuant to Section 4 of the FAA.[4]

"Where a motion is brought to compel arbitration, a court 'applies a standard similar to that applicable for a motion for summary judgment' in that it must determine whether there is 'an issue of fact as to the making of the agreement for arbitration.'" Rosen v. Mega Bloks Inc., 2007 WL 1958968, at * 3 (S.D.N.Y. July 6, 2007) (quoting Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)).

> In deciding whether a dispute is arbitrable, we must answer two questions: (1) "whether the parties agreed to arbitrate," and, if so, (2) "whether the scope of [that] agreement encompasses the claims" at issue. Campaniello Imports, Ltd. v. Saporiti Italia S .p.A., 117 F.3d 655, 666 (2d Cir. 1997).

---

[2]Section 3 of the FAA provides:

> If in any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration <u>under an agreement in writing for such arbitration</u>, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding <u>is referable to arbitration under such an agreement</u> shall upon application of one of the parties stay the trial of the action until such arbitration <u>has been had in accordance with the terms of the agreement</u>. . . .

9 U.S.C. § 3 (emphasis added).

[3] Section 4 of the FAA provides that a party may obtain an order "directing that [an] arbitration proceed in the manner provided for in [an arbitration] agreement."

[4] The movant, IBR, has failed to submit a memorandum of law as required by the Local Rules. See N.D.N.Y.L.R. 7.1(a). Consequently, IBR fails to provide any legal authority in support of dismissal of the action. The Court need not rule upon arguments that are not presented or legally supported. See Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 291 (2d Cir. 2000)(The Local Rules require the parties "to clarify the elements of the substantive law which remain at issue because they turn on contested facts" and the Court "is not required to consider what the parties fail to point out.")(internal quotation marks and citations omitted); see also N.D.N.Y. L. R.7.1(b)(3).

> Consistent with the strong federal policy in favor of arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

Bank Julius Baer & Co. v. Waxfield Ltd., 424 F.3d 278, 281-82 (2d Cir. 2005). "[I]n deciding whether the parties agreed to arbitrate a certain matter, courts should generally apply state-law principles that govern the formation of contracts." Mehler v. Terminix Int'l Co. L.P., 205 F.3d 44, 48 (2d Cir. 2000), cert. denied, 533 U.S. 911 (2001).

> "[A]rbitration is entirely a creature of contract." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 104 (2d Cir. 2006). Thus, "which disputes are subject to arbitration are determined entirely by an agreement between the parties .... Without the contract, the arbitration ... never could exist." Id. Agreements to arbitrate are enforced "in accordance with their terms." Volt Info. Sci. v. Bd. of Trustees, 489 U.S. 468, 478 (1989). Therefore, "[t]he scope of an arbitration clause, like any contract provision, is a question of the intent of the parties." S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190, 193 (2d Cir. 1984) (citing Necchi S.p.A. v. Necchi Sewing Mach. Sales Corp., 348 F.2d 693, 696 (2d Cir.1965), cert. denied, 383 U.S. 909 (1966)).

Rosen, 2007 WL 1958968, at * 4

Addressing the instant motion with a standard similar to that applicable for a motion for summary judgment, the motion must be denied because legal questions remain as to IBR's basis for dismissal and whether the dispute falls within the scope of the mandatory arbitration clause of the Subcontract. See Contec Corp. v. Remote Solution, Co., Ltd., 398 F.3d 205, 208 (2d Cir. 2005)("Under the FAA, there is a general presumption that the issue of arbitrability should be resolved by the courts.")(citing First Options of Chicago, Inc.

6

v. Kaplan, 514 U.S. 938, 944-45 (1995)).[5]  Further, factual disputes exist as to, *inter alia,* whether either party properly invoked the arbitration provisions of the Subcontract by serving a Dispute Notice; whether counsel agreed to waive the Dispute Notice requirement; and whether counsel agreed to submit the matter to arbitration.

Accordingly, the Court concludes that IBR has not established its right to the relief sought in the Notice of Motion and, therefore, the motion must be denied. Nonetheless, because of the strong preference to arbitrate disputes where the parties have so agreed, and because disputed factual issues usually result in a hearing under FAA § 4 applications, see 9 U.S.C. § 9,[6] IBR is granted leave to renew the motion upon proper papers.  See e,g, N.D.N.Y. L.R. 7.1(a)(3).

## IV.  CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss the instant action is **DENIED** with leave to renew upon proper papers.  If the motion is renewed, and for all other motions and matters in this action, counsel are forewarned to comply with the Local Rules.  Inasmuch as the motion, if renewed, *may* require limited discovery, the parties are advised to seek the assistance of the Hon. George H. Lowe, the United States Magistrate Judge assigned to this matter.

---

[5] The Court offers no opinion on whether the instant dispute involves "the correlative rights and duties of [the] Owner" and thus subject to mandatory arbitration under the first clause of Subcontract § 4.2.1.3. However, as framed in IBR's reply declaration, the argument appears to run counter to IBR's argument that Actus agreed, through Haas, to arbitrate the dispute.  If the dispute involved "correlative rights and duties of the Owner," then, under the terms of the Contract, it would appear that Section 4.2.1.3 of the Subcontract offers arbitration as the only option.  Inasmuch as this particular argument was raised in IBR's reply declaration, Actus should be afforded an opportunity to respond before the issue is ruled on. See Booking v. General Star Mgmt. Co., 254 F.3d 414, 418 (2d Cir. 2001)(opposing party should be afforded an opportunity to address issues raised in reply papers).

[6] Section 4 provides in pertinent part: "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."

**IT IS SO ORDERED**.

DATED: August 14, 2007

Thomas J. McAvoy
Senior, U.S. District Judge